IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mariely Marie Ortiz<br>    Plaintiffs<br><br>           vs.<br><br>Bioanalytical Instruments, Inc.;<br>Robert Gregory<br>    Defendant | CIVIL NO.<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

**THE HONORABLE COURT:**

**NOW COMES** plaintiff **Mariely Marie Ortiz** by and through the undersigned attorney and very respectfully alleges and prays as follows:

I.  NATURE OF THE ACTION

This action for damages and for injunctive and declaratory relief is brought by a pregnant woman who worked full time for Bioanalytical Corp. for approximately a year and six months, before her constructive discharge. Plaintiff alleges that she was subject to sex discrimination and disability discrimination due to her pregnancy at the workplace, characterized by her employer's disparate treatment of her shortly after informing her pregnancy, the denial of a promotion she had been promised when the position opened and the imposition of requirements when her pregnancy caused disabling circumstances at work.  She alleges constructive discharge and illegal sex and disability discrimination in violation of the laws of the United States and the Commonwealth of Puerto Rico.

## II. JURISDICTION

1. The jurisdiction of this court is invoked pursuant to 28 U.S.C. 1331, 2201, and 2202. This case is a suit arising under federal law against discrimination in employment, ADA 42 U.S.C 12101 et seq., Pregnancy Discrimination Act of 1978 and Title VII of the Civil Rights Act 42 U.S.C. 2000 et seq.

2. Pendent jurisdiction is invoked pursuant to the Judicial Improvements Act, 28 U.S.C. 1367.

3. This is the proper venue to bring this action since the facts relating to the cause of action arose in this District.

## III. PARTIES

4. Plaintiff Mariely Marie Ortiz Rodriguez. (referred to hereinafter as "Ortiz"), is a 27 year old woman resident of the municipality of Manatí, Puerto Rico. She was an employee of Bioanalytical Instruments, Inc. for close to a year and six months.

5. Defendant Bioanalytical Instruments Inc. at all times relevant in this complaint was a corporation duly organized and existing under the laws of the Commonwealth of Puerto Rico and engaged in sales and technical support operation. It functions as an employer engaged in interstate commerce. On information and belief, Bioanalytical Inc. employed more than 16 employees in each calendar week in the current and or preceding calendar year.

6. Defendant Robert Gregory (referred to hereinafter as "Gregory") was at all times relevant to this complaint a managerial employee of Bioanalytical Instruments Inc. As such, he functioned as an agent, manager, and representative of the same. He was

the direct supervisor of Norka del Rosario, his wife and the human resources officer and Mr. Juan Minier, "Ortiz's" direct supervisor.

### IV. FACTS AND STATEMENT OF THE CLAIM

7. The plaintiff was interviewed by "Gregory" on September 16, 2013. During that interview "Gregory" the plaintiff informed the position she was interested in, "Gregory" informed her that they were looking for a sales representative for the Invitrogen reactives, position which would be opening in the near future, two or three months down the road. "Gregory" and Mr. Juan Minier suggested she stay in the company awaiting for the position and thus she could learn the ropes in the meantime. The plaintiff accepted the position of receptionist and secretary of the sales department with the expectation of learning the functioning of the company and then obtaining the position as sales representative. "Ortiz" accepted the position although she was overqualified as per her education because she was led to believe the actual position would be hers when it opened. Thus, she made the sacrifice of traveling from Manatí to San Juan, under the information and belief that in the near future she would obtain the position of sales representative a position more suited to what she had studied and that fulfilled her income expectations.

8. On September 17, 2013, "Ortiz" began working as a receptionist and secretary for the sales department.

9. On December 15, 2013, Bioanalytical Instruments sends a letter to "Ortiz" informing her she has obtained a permanent position within the company. In this letter she was commended for her keen interest in learning her job, her responsibility, her attitude and cooperation with her co-workers.

10. On April 15, 2014, "Ortiz" was given a $400.00 (four hundred dollar) raise in her salary due to her job execution particularly her initiative, comradeship, good work coordination and timeliness.

11. On May 5, 2014, "Ortiz" is absent for the first time since starting at Bioanalytical Instruments, Inc. She was feeling ill and went to her physician who informed her she was pregnant. Throughout her pregnancy she presented with severe nausea and vomiting, anemia, gallbladder stone. She was diagnosed with Hyperemesis gravidarum.

12. On May 6, 2014, "Ortiz" informed management of her pregnancy.

13. On May 28, 2014, "Gregory" sends an email informing that during the summer his daughter Pamela Gregory would be working in the office assisting the service department with the purpose of promoting the sales of service contracts.

14. On June 19, 2014, "Gregory" sends another email containing an organizational chart of the company structure in which Pamela Gregory appears placed in the special projects division and is supervised solely by her father "Gregory".

15. Between May 30 and June 30, 2014, "Ortiz" was absent continuously due to her pregnancy complications. She was deemed a high risk pregnancy, due to her severe weight loss bordering in malnutrition. "Ortiz" always provided timely medical certificates justifying her absences.

16. Upon returning on June 30, 2014, Pamela Gregory was occupying her desk and performing "Ortiz's" usual duties. At first, "Gregory" explained Pamela would be helping out so as to learn the ropes in all aspects of the company.

17. On July 1, 2014, upon arriving at her desk, "Ortiz" is met with a note from "Gregory" with instructions. The note stated she would not be carrying out her usual duties,

instead she would complete a report she had prepared on previous occasions, and the report would be updated as new purchase orders came forth. Furthermore, he stated that his daughter, Pamela, would be replacing "Ortiz" and would now be in charge of her usual duties. Up to this date no negative performance reviews were done on "Ortiz's" work, the decision to replace her was based solely on the fact that "Ortiz" was pregnant and having complications due to her pregnancy.

18. Shortly thereafter, "Gregory" sent "Ortiz" an email with a belligerent tone, emphasizing that he had left her clear instructions on her desk and enquiring whether she was clear on its content. "Ortiz" replied the email informing "Gregory" that the report was done and she understood that all that needed to be done was updating it as purchase orders came forth. The ensuing answer email "Gregory" sent restated to follow the instruction given and that Pamela, his daughter would be replacing "Ortiz" in her position within the company and on that same day she was moved to another desk. Thereafter, he informed the rest of the employees that "Ortiz" was no longer in charge of her duties that were now to be carried out by his daughter Pamela.

19. On July 2 and July 3, 2014, "Ortiz" was not allowed to use her desk or carry out her usual duties. On July 7, 2014, the stress from work makes her condition worse and "Ortiz" is absent from work again.

20. On July 9, 2014, "Gregory" sends an email to Thelma Alfonso and instructed her to teach Pamela the process of order traffic processing, he stated that if "Ortiz" returned while Thelma was on vacation, she was to return to her duties as sales secretary and Pamela would be in charge of order traffic processing. Up until that date, "Ortiz" had been in charge of order traffic processing during Thelma's absences.

21. On July 10, 2014, "Ortiz" goes to a doctor's appointment and is hospitalized due to

her worsening state of health, she is malnourished due to the Hyperemesis gravidarum. "Ortiz" remained hospitalized until July 18, 2014.

22. On July 23, 2014, "Ortiz's" physician fills out the Sinot form and prescribes rest until September 1, 2014.

23. On July 24, 2014, "Ortiz" remits the form to Norka del Rosario, "Gregory's" wife, and the officer in charge of human resources. The form certifies that "Ortiz" would be apt to go back to work on September 1, 2014.

24. On or about September 1, 2014, "Ortiz" writes to management and reminds them she would be going back to work on the following day, since her physician had cleared her to go back to work. On that same day "Ortiz's" supervisor writes back and informs her that before going back to work they would both meet with "Gregory" to discuss "Ortiz's" health situation and that she should bring the medical certificate that cleared her to go back to work. All this electronic correspondence was copied to both "Gregory" and Norka del Rosario.

25. On the night of September 1st, 2014, Norka del Rosario sends a text message to "Ortiz's" mobile phone. The purpose of the text was to ensure herself that "Ortiz" had understood her supervisor's message, which was that "Ortiz" was not to report herself back to work until **after** she met with "Gregory". Thus, "Ortiz" was not authorized to go back to work, (she was effectively suspended for no just casue) until a week after the physician had indicated since both "Gregory" and Norka del Rosario were out of town until the following week. Norka del Rosario enquired whether the meeting could be held September 9, 2014 at 4pm.

26. "Ortiz" replied that the date and time for the meeting was fine, but that she was confused since the form her physician had completed was clear that she could return

to work on September 1, 2014, and the physician explained the form was all certification needed by law for her to be cleared to go back to work. The act by Bioanalytical Instruments Inc. of requesting additional medical certification was disparate treatment against "Ortiz" for her pregnancy, given that to return to work, the law only requires that the SINOT form be filled and signed by a licensed physician.

27. Notwithstanding what her physician had explained regarding the SINOT certificate being sufficient medical certification, "Ortiz" wrote to Norka del Rosario that if they required additional certificates she would comply. Norka del Rosario replied that the company would require a certificate from her physician that would vouch that she was apt to work full time, uninterruptedly. Again, disparate treatment was displayed against "Ortiz" for her pregnancy, given that any other employee who presented a disability claim would have to be given reasonable accommodation, not forced to provide a certificate that vouched that they can work uninterruptedly.

28. On September 9, 2014, "Ortiz" meets with "Gregory", who enquired whether she obtained the requested medical certificate. "Ortiz" provided the certificate, but "Gregory" protests that the certificate does not state she's cleared to work uninterruptedly. "Ortiz" informs him that she discussed the content of the certificate with her physician and the physician stated he could not provide such a certificate. In fact, the physician implied the demand of such a certificate was illegal given she was pregnant and imposing such a certificate was indeed a discriminatory act.

29. Throughout the rest of the meeting "Gregory" kept asking if "Ortiz" would be able to comply with eight hours five days a week, to which she replied yes. "Gregory" informed her that during her absence the company had paid her health insurance and

she should take it as a gift. "Ortiz" retorted that she had worked from June 3, 2014 to July 3, 2014, and she had not been paid. "Gregory" went on to inform her that upon "Ortiz" return to work she would not go back to her desk or duties, which would continue in his daughter's charge, and that after her maternity leave, his daughter would be promoted to sales representative (the position which "Ortiz" had been waiting for", and "Ortiz" would return to her secretarial duties. Moreover, "Gregory" orders "Ortiz" not to return to work until September 16, 2014, effectively suspending her, forcing her to lose a substantial amount of her income unjustifiably and despite her physician's certification that she was apt to go back to work on September 2, 2014.

30. After finishing the meeting "Ortiz's" health took a turn for the worse, she realized she would not be promoted and there was nothing she could do since she had a baby on the way and badly needed the income. Her distress at that moment was unmeasurable.

31. "Ortiz" realized that despite being much more academically apt for the sales position she had lost it to someone who was only starting university courses in that field. Furthermore, it was evident that her absenteeism due to her pregnancy had undermined her chances of gaining the position she had long awaited for and had been promised since her first interview with the company

32. On September 17, 2014, "Ortiz" requests a half day medical leave for September 18, 2014.

33. On September 18, 2014, "Gregory" writes an email to "Ortiz". Reproaching her for requesting medical leave after she had stated she was cleared to go back to work eight hours five days a week. He implied she had lied to him. He further instructed any additional medical leaves were to be informed to him as well. The email addresses

utilized were both "Ortiz's" personal and work, and carbon copied Pamela Gregory, Norka del Rosario and her supervisor Juan Minier.

34. On September 19, 2014, on her way to work, "Ortiz" reads "Gregory's" email. This correspondence causes her great distress and indignation. She proceeded to explain that on the date of her appointment some complications ensued and she had opportunely informed through email and phone to her supervisor that she would be delayed and would not return as foreseen, and she had made the judgement call to remain and finish her medical appointment so as not to be absent yet another day. "Ortiz" retorted to "Gregory's" insinuation that she had lied about her ability to work uninterruptedly by stating that the certificate he requested was an illegal and discriminatory act, since pregnancies were unpredictable and she had no control over the complications that arose and neither her or her physician had control of that and therefore could not vouch for the future of pregnancy or her ability to work uninterruptedly.

35. After that date her supervisor, Juan Minier would personally check to see at what time "Ortiz" had arrived at work and if she had done so on a timely basis, a practice that was not done on anyone else.

36. On September 22, 2014 at 3:00am "Gregory" replies to "Ortiz's" personal email address, once again copying three other recipients. In that email he expressed concern over "Ortiz" interpretation of his message and informed her from there on he was instructing everyone in the company to not enquire about her health. Furthermore he justified the request for certification of her ability to work uninterruptedly as his need to know how much he can count on her at work (despite he had relieved her of her duties by then).

37. "Ortiz" opted not to reply to this last communication since she felt reprisals were being taken against her, and feared more were to come.

38. Upon reading that email "Ortiz" started feeling ill, and started vomiting uncontrollably. She also felt stabbing pain in her belly. She felt fearful for her health and called her husband to come pick her up at work.

39. On that day "Ortiz's" physician informed her she was having contractions and warranted bed rest. He informed her he was prescribing bed rest until her due date. "Ortiz" emailed management and attached the medical certificate that stated her gynecologist recommended bed rest for two weeks. She also requested the SINOT form.

40. "Ortiz" began a downward spiral of depression and anxiety, she feared she would be fired and at that point in time she was the sole bread winner of her home, since her husband was finalizing doctoral studies. "Ortiz" began psychiatric treatment thereafter, since she feared her mental state would affect her baby's health.

41. On September 24, 2014, Norka del Rosario sent an email to Mrs. Serrano (FNU) from MAPFRE Insurance Company, where del Rosario certified that "Ortiz" had worked from June 30, 2014 to July 3, 2014. Furthermore, she added that another claim would ensue for Integrand the new insurance company to claim salary from July 4, 2014 to September 15, 2014, since "Ortiz" has returned to work on September 16, 2014. Norka del Rosario intended that "Ortiz" claim salaries from SINOT for the two weeks that she had been suspended without just cause, since "Ortiz's" physician had cleared her to go back to work on September 1, 2014, and it was "Gregory" who precluded her from going back to work. "Ortiz" felt this would be an illegal claim to the insurance and thus never filed the claim as Norka del Rosario anticipated she would.

42. It was not until October 1, 2014, that "Ortiz" receives the insurance's payment for her salary, since Bioanalytical Instruments delayed the submittal of the claim. Upon enquiring directly at MAPFRE, "Ortiz" was informed the insurance had a two week turnover once the claim was filed, thus if it took two months it was due to the fact the claim had not been filed immediately after the paperwork was submitted by the employee.

43. On October 5, 2014, "Ortiz" sends an email to Norka del Rosario with an attachment containing the form filled by her physician and herself where she is declared disabled to go back to work until her due date. "Ortiz" wanted the company to know about her future absences and the company may opportunely fill out its part. On October 9, 2014, "Ortiz's" husband bring the papers personally to the company.

44. Notwithstanding the fact that "Ortiz" and her husband brought the papers at the beginning of October, according to Integrand Assurance it wasn't until October 31, 2014, that they received the complete documentation for the claim.

45. On November 27, 2014, Norka del Rosario wrote an email to "Ortiz" explaining she had her Christmas bonus and some accumulated days of salary. However, she explained that "Ortiz" owed the company the portion of her health insurance and enquired whether "Ortiz" wanted to use the bonus and the salary owed to accrue to her debt with the company for her health insurance.

46. "Ortiz" replied that she believed the deduction of her Christmas bonus was unfair and illegal. That she felt that since her pregnancy the company had committed a number of irregularities and had treated her unfairly. Ortiz also expressed all this treatment on behalf of the company had affected her throughout her pregnancy. She stated that she was receiving her wages from July and September in December and on top of that

they purported to make those deductions from her Christmas bonus. Furthermore, when it was initially raised, "Gregory" had stated she should consider the payment of the health insurance as a gift, and now months after they were trying to collect from her at a moment of great emotional and financial hardship.

47. "Ortiz's" Christmas bonus was sent on December 19, 2014, she received it on December 23, 2014,

48. On December 29, 2014, Integrand Assurance sent a letter informing that the benefits stemming from her claim expired on December 8, 2014, that Ortiz should communicate with her employer to extend the benefits from December 9, 2014 to February 3, 2015. "Ortiz" was supposed to receive the benefits until her due date but Bioanalytical Instruments, Inc. provided different information and thus a months of benefit was interrupted.

49. On January 10, 2015, "Ortiz" and her husband were undergoing severe financial hardship and decided to apply for a loan from "Cooperativa de Ciales". "Ortiz" requested an employment certification from Norka del Rosario so as to qualify for the loan.

50. On January 12, 2015, Norka del Rosario writes an email enquiring about the baby and asking whether she would answer the questions made about her repayment of the health insurance fees owed. "Ortiz" felt that not providing the employment certification was a reprisal for her complaints about her treatment during her pregnancy.

51. On January 15, 2015, "Ortiz" gives birth to her baby. On that date Norka del Rosario informs her that same day they were sending her employment certification and her maternity check.

52. On February 22, 2015, "Ortiz" sends an email to Norka del Rosario where she informs her the exact date of her baby's birth, and to enquire on what date she was expected back at work.

53. On February 23, 2015, (notwithstanding she was told it was sent on January 15, 2015), "Ortiz" received the employment certification as well as her maternity check.

54. The employment certification was dated January 5, 2015, when "Ortiz" had requested it on January 10, 2015. The Coop questioned this fact in "Ortiz's" application. Furthermore, in the job application Norka del Rosario included the fact that "Ortiz" had been in an unpaid license since June 1, 2014. The Cooperative explained that due to the fact that "Ortiz's" credit was good they could give her the loan but they would have to call and corroborate she had an expectation of future income with Bioanalytical Instruments Inc. Days after this last communication the representative of the Coop called "Ortiz" and informed her they would be unable to disburse the loan due to the fact that they had called on various occasions and upon informing the purpose of the call they were left on hold and no one ever came on line to answer their enquiries. This last fact sealed the Cooperative's denial of "Ortiz" loan request.

55. In "Ortiz's" maternity check the deduction for the health insurance debt was made, however there was a deficiency in the amount in detriment of "Ortiz".

56. On February 25, 2015, "Ortiz" files a complaint at the EEOC.

57. On March 16, 2015, under doctor's recommendations "Ortiz" presents her letter of resignation. Returning to the hostile environment of her workplace will be detrimental to her mental health.

58. On June 5, 2015, "Ortiz" requests unemployment benefits, informing she was a victim of discrimination due to her pregnancy and she was forced to resign.

59. On June 11, 2015, "Ortiz" received a letter informing her denial of benefits of unemployment due to the fact that she had left her job without just cause.

**WHEREFORE**, Defendant respectfully prays that this Honorable Court take into consideration the above-mentioned information.

**I HEREBY CERTIFY** that on this same date, a true and exact copy of this document has been filed using the CM/ECF system and that the government and all counsel of record will be served a copy of this Motion.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on August 18, 2015.

*S/Jennie Mariel Espada*

**Jennie Mariel Espada**
 **USDCPR NO. 225003**
**PO BOX 13811**
**San Juan, PR 00908**
**787-602-6326/787-773-0500**
**espada.esquire@gmail.com**